JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Geraldo Santiago appeals from the decision of the Cleveland Municipal Court that found Santiago guilty after a trial to the bench. Finding no error in the proceedings below, we affirm.
 {¶ 2} The following facts give rise to this appeal. On February 6, 2004, Santiago received a citation from City of Cleveland Police Officer James Simone for parking in a handicapped parking zone, in violation of Section 4511.69(E) of the Ohio Revised Code. In addition, Santiago was cited for not having a valid driver's license, in violation of Section 435.01(A) of the Codified Ordinances of the City of Cleveland.
 {¶ 3} At trial, the testimony revealed that Santiago parked in the yellow striped-out area adjacent to the handicapped parking space. He picked up his take-out order and upon returning to his vehicle was stopped and questioned by Officer Simone. Santiago admitted that he drove there, that it was his employer's truck, and that he parked there because there were no spots available and he was in a hurry. Santiago produced his Ohio identification card along with a driver's license issued in Puerto Rico. Santiago was cited and his car was towed.
 {¶ 4} Santiago argued that the yellow striped-out area was not part of the handicapped parking space. Further, Santiago argued that he had a valid driver's license from Puerto Rico and therefore was not in violation of the law.
 {¶ 5} The trial court found Santiago guilty of both charges. The trial court found that "there is no limitation as to the size of any handicapped area" and that the international sign designating the handicapped space was located in the middle of the large area that included the yellow striped-out area. The court found that Santiago was parked within the area of the sign and therefore was in violation of the law. The trial court further found that Santiago was a resident of Ohio because he lived and worked in Ohio for six years and therefore did not qualify for the nonresident exception.
 {¶ 6} Santiago appeals this decision, advancing one assignment of error for our review.
 {¶ 7} "I. The court erred in finding appellant guilty of the citation charges in that the verdict and judgment of the Court is against the manifest weight of the evidence."
 {¶ 8} Specifically, Santiago argues he was not parked in the handicapped space because the definition of handicapped space does not include the yellow striped-out area adjacent thereto and the court's finding of guilt is against the manifest weight of the evidence. Further, Santiago argues that he had a valid driver's license from Puerto Rico and therefore was not in violation of the law.
 {¶ 9} In reviewing a claim challenging the manifest weight of the evidence, we are directed as follows: "`[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 10} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169. Furthermore, the power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin, 20 Ohio App.3d at 175.
 {¶ 11} Here, Santiago parked in the striped-out area, which provided direct access to the sidewalk ramp for disabled individuals. This striped-out area was adjacent to the parking space typically thought to be the actual space where vehicles park.
The trial court ruled that when it looked at the totality of the handicapped space, that space included the striped-out area, and thus Santiago violated the law; we agree.
 {¶ 12} "The interpretation of a statute is the determination of what the statute means. The interpretation starts and ends with the words chosen by the legislature, but is not limited to the words alone, because the whole context of the enactment must be considered.
 {¶ 13} "The process of interpretation requires (1) a decision about the purpose to be attributed to the statute and (2) a decision about the meaning of the legislature's words that will carry out that purpose. The words have a double function: They serve as guides to discovery of the purpose, and they serve as limitations on the extent of the statute's applications. The words must be taken in their usual, normal or customary meaning."State v. Cravens (1988), 42 Ohio App.3d 69, 72.
 {¶ 14} R.C. 4511.69(F) states: "No person shall stop, stand, or park any motor vehicle at special parking locations provided under division (E) of this section * * *." Subsection E requires special parking locations and privileges be designated and provided for persons with disabilities, also known as handicapped parking spaces. "The locations shall be designated through the posting of an elevated sign, whether permanently affixed or movable, imprinted with the international symbol of access and shall be reasonably close to exists, entrances, elevators, and ramps." R.C. 4511.69(E).
 {¶ 15} The statute requires "special parking locations and privileges," not just a parking space. In the case at bar, the striped-out area provides the extra space needed to unload and load wheelchairs and walkers, as well as access to enter and exist via the ramp. Therefore, we find that the striped-out area immediately adjacent to handicapped parking spaces is part of the "special parking locations and privileges" provided for persons with disabilities pursuant to R.C. 4511.69(F) and (E). Hence, Santiago was properly found guilty.[1]
 {¶ 16} Next, Santiago appeals the trial court's finding of guilt for driving without a valid driver's license. Section 435.01(A) of the Codified Ordinances of the City of Cleveland states: "No person, * * *, shall operate any motor vehicle upon a street or highway or any public or private property used by the public for purposes of vehicular travel or parking in the City unless such person, upon application, has been licensed as an operator or chauffeur by the Ohio Registrar of Motor Vehicles under RC Chapter 4507."
 {¶ 17} Santiago argues that he is not required to have an Ohio driver's license because he is a nonresident and he has a valid driver's license from Puerto Rico. Section 435.01(b) indicates that a nonresident of Ohio may drive any motor vehicle upon a street or highway within the city if he has a valid driver's license from another jurisdiction recognized by the state of Ohio.
 {¶ 18} The testimony revealed that Santiago resided and worked in the Cleveland area for the past six years. He acquired an Ohio identification card pursuant to R.C. 4507.50, which does not grant driving privileges. Santiago did have a driver's license from Puerto Rico; however, Officer Simone did not verify whether it was valid. The trial court ruled that Santiago was a resident of Ohio and therefore guilty of driving without a valid Ohio driver's license. We agree with the trial court's finding.
 {¶ 19} "Two fundamental elements essential to create a residence are bodily presence in a place and the intention of remaining in that place." City of Upper Sandusky v. Harris
(Aug. 1, 1983), Wyandot App. No. 16-82-6, citing 77 C.J.S. 295, Residence. "It need not be an intention to remain in a given place for all time, and is generally sufficient if the intent be to make presently the given location home, even though the person may have in mind the possibility of making a change should future events demand." Id.
 {¶ 20} Santiago lived and worked in Cleveland for six years; there is no indication that he did not plan to stay here or that he frequently moved back and forth from Puerto Rico to Ohio. The critical evidence here is the fact that Santiago obtained an Ohio state identification card. Although we are cognizant of the need for such identification to perform routine tasks, such as banking, obtaining such an identification card indicates residency.
 {¶ 21} Although a valid license from Puerto Rico entitles the holder to operate a vehicle in Ohio, the nonresident exception is intended for those individuals visiting the state or driving through the state, not individuals who live and work in this state. Therefore, Santiago was properly found guilty.
 {¶ 22} Santiago's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Celebrezze, Jr., J., concur.
[1] In City of Niles v. Raymond Antonelli (Feb. 7, 1992), Trumbull App. No. 91-T-4538, the defendant was found guilty of parking in a handicapped parking space in violation of the city ordinance when he parked in the "end cap" area adjacent to the parking space designated for handicapped parking. Niles City Ordinance Section 351.04(f) states in pertinent part: "No person shall stop, stand or park any motor vehicle at special parking locations provided for handicapped persons under this section or at special, clearly marked, parking locations provided for handicapped persons * * *." The trial court found that the handicapped area includes the "end cap." The Eleventh Appellate District, however, disagreed, reasoning that there is no indication that the adjacent areas, or "end caps," were to be included as part of the handicapped parking area. We respectfully disagree with the Eleventh District's decision.